EXHIBIT A

DECLARATION OF MARK A. ROHRS

MARK A. ROHRS, pursuant to 28 U.S.C. § 1746, declares the following:

1. I am employed by the Department of Homeland Security ("DHS"), Citizenship and Immigration Services Division ("USCIS"), as an Assistant Center Director at the Nebraska Service Center ("NSC") in Lincoln, Nebraska. During the temporary absence of the Director and Deputy Director during the week of January 21, 2008, I am the Acting Center Director. It is in that capacity and based upon reasonable inquiry and my knowledge, information and belief that I provide this declaration.

2. The Director of the NSC is a named defendant in the case Chen v. Gonzales, 07-04698, presently pending in the United States District Court for the Northern District of California. Plaintiff, Xiling Chen, seeks to have her pending Form I-485, Application for Adjustment of Status, adjudicated.

3. Plaintiff is a native and citizen of the People's Republic of China who has been assigned alien registration number A97 859 574. She filed Form I-485, Application for Adjustment of Status, at the California Service Center on April 19, 2004. The application was assigned receipt number WAC-04-142-54207 and remains

pending. Due to a realignment of work among the Service Centers, Plaintiff's application was transferred to the Nebraska Service Center on March 13, 2007, for completion of the adjudication.

4. Plaintiff currently enjoys lawful nonimmigrant status in the United States as an H-1B temporary alien worker based on a nonimmigrant worker petition filed on her behalf by Tibco Software, Inc. That status, renewable upon application by the employer, is valid through March 1, 2009.

5. Plaintiff's adjustment of status application is based on a Form I-140 visa petition for immigrant ("green card") worker that was filed on behalf of Plaintiff's husband, Zhenru Ding, by his employer OSA Technologies, Inc., on April 19, 2004. The Form I-140 visa petition was approved by USCIS on January 19, 2005, in the second preference employment category for advanced degree professionals. The priority date for visa number purposes is the date the labor certification application was initially filed with the Department of Labor by the employer: December 21, 2001. The purpose of the Form I-140 and Form I-485 filings is to obtain lawful permanent resident status ("green cards") for the alien worker and any qualified derivative spouse

and children. Plaintiff is a derivative spouse of her husband's immigrant worker visa petition.

6. General requirements for employment-based adjustment of status applications are that the alien is the beneficiary of an approved I-140 visa petition (or whose spouse has adjusted status as such a beneficiary), is in lawful immigration status on the date the Form I-485 is filed, has a visa number immediately available under the annual per-country and preference category quota, and is not inadmissible to the United States under listed statutory grounds that include health-related, criminal, and national security provisions.

7. Plaintiff's application for adjustment of status is ready to be adjudicated except for her pending background and security check.

8. The attached Fact Sheet explains the different types of background and security checks relevant to the statutory requirement that the alien be admissible to the United States that must be completed prior to adjudication of Form I-485.

9. When an alien applies for adjustment of status, USCIS conducts several forms of security and background checks to ensure that the alien is eligible for the

immigration benefit and that he or she is not a risk to national security or public safety. In addition to records checks against DHS's own immigration systems, these background checks currently include (a) a Federal Bureau of Investigation (FBI) fingerprint check, (b) a check against the DHS-managed Interagency Border Inspection System (IBIS) that contains records and "watch list" information from more than twenty federal law enforcement and intelligence agencies, and (c) an FBI name check, which is run against FBI investigative databases containing information that is not necessarily revealed by the FBI's fingerprint check or IBIS.

10. Since the terrorist attacks of 9/11, USCIS has submitted millions of name check requests to the FBI, thus taxing that agency's resources and creating a backlog in FBI's performance of complete security checks. During the initial submission period of December 2002 and January 2003, USCIS submitted almost 3 million names to the FBI.

11. Delays in adjudication caused by pending FBI name checks are lengthy in some cases. As of November 21, 2007, USCIS reported 316,420 FBI name check cases

pending, with 54,639 FBI name checks pending more than 24 months, and 31,003 pending longer than 33 months.

12. Plaintiff's name check request was electronically submitted to the FBI on April 29, 2004, less than two weeks after the Form I-485 was filed. FBI acknowledged receipt of the name check request electronically on May 3, 2004. The name check remains pending.

13. Plaintiff's husband's application for adjustment of status was approved on January 18, 2005. Plaintiff's spouse's name check was completed earlier than hers and thus Plaintiff's spouse's case was able to be adjudicated sooner. While it is unfortunate when family members' cases are separated, it is USCIS's policy to adjudicate the principal worker's case as soon as it is adjudication ready, rather than to hold adjudication of the entire family in abeyance for background security checks to be completed on one or more of the derivative cases.

14. The fingerprint check must be less than fifteen months old at the time any application or petition is adjudicated. Plaintiff was fingerprinted on June 3, 2004; October 28, 2005; and March 21, 2007. Rescheduling for fingerprinting is done to ensure that

the application will be adjudication-ready once Plaintiff's FBI name check is completed.

15. Plaintiff's preliminary IBIS checks have been completed. Remaining IBIS checks are performed by the officer at the time of final adjudication if deemed necessary. The refreshing of IBIS checks can be completed within minutes in most cases.

16. There are five USCIS regional Service or Benefit Centers throughout the United States, each of which has jurisdiction over certain applications and petitions filed by persons or companies within its respective geographic jurisdiction, and/or exclusive nationwide jurisdiction over other types of applications. These Centers adjudicate cases on a mail-in basis only; they do not conduct in-person interviews. Employment-based adjustment of status cases like Plaintiff's are handled at the Nebraska and Texas Service Centers.

17. The Nebraska Service Center employs over 1,000 federal and contract workers and currently has approximately 187,930 employment-based Form I-485 adjustment of status cases pending; 70,579 of those pending employment-based cases are awaiting completion of FBI name checks. Cases at the Service Center awaiting responses on FBI name checks are audited on a regular

    basis so that they may be routed to an adjudicator as soon as the cases are ready to be worked to completion. Plaintiff's FBI name check is pending. A response is required from the FBI before the case can be adjudicated.

18. During fiscal year 2007 the Nebraska Service Center completed adjudication on 919,966 applications and petitions.

19. Generally, applicants for adjustment of status may apply for employment authorization documents and advance parole travel authorizations, renewable on an annual basis upon application. Plaintiff's employer has filed nonimmigrant visa petitions to keep her H-1B worker status current. Plaintiff has had travel documents issued to her in the past but does not currently have a valid travel document, nor does she have an application pending for a new travel document. There is no requirement that an applicant for adjustment of status maintain a current advance parole travel document. Plaintiff could return from travel abroad on her valid H1-B nonimmigrant visa if she desired to leave the United States.

20. Service Centers have a process for expediting processing of certain applications and petitions.

However, it is important to note that whenever a particular application or petition receives expedited processing and is moved up in the adjudications queue, it is at the expense of those still unadjudicated petitions or applications that bear an earlier filing date. If, for example, USCIS asks the FBI to expedite a case, this action comes at the expense of other name check cases, many of which have been pending since December 2002, because FBI would have fewer resources with which to work the other pending cases. USCIS is currently limited in the number of expedite requests that can be made to the FBI each week, and there is a backlog even in submitting the expedite requests for cases that have been deemed by USCIS to meet expedite criteria.

21. In order to address in a consistent and fair manner the increasing number of mandamus actions filed nationwide by aliens awaiting decisions on their petitions and applications, USCIS issued specific guidelines for requesting an expedited name check from the FBI. Expedited processing may be pursued in cases at USCIS's discretion for military deployment, age-out cases and applications affected by sunset provisions, significant and compelling reasons such as critical medical

conditions, loss of social security benefits or other subsistence, severe financial loss, extreme emergent situation, humanitarian situation, nonprofit status of requesting organization in furtherance of the cultural and social interest of the United States, Department of Defense/National Interest requests from official U.S. government entity, USCIS error, or compelling interest of USCIS.

22. Expedite requests are determined on a case-by-case basis. Plaintiff states in her complaint that she wishes to have his green card quickly because he finds it inconvenient to have to apply for work permits and travel documents like other non-resident aliens, and she would like to being accruing time to meet the five-year residence requirement for naturalization. These are not grounds for expediting Plaintiff's case ahead of tens of thousands of others. Common reasons generally found not to constitute special circumstances include a desire for "peace of mind" and the inability of non-lawful permanent residents or non-U.S. citizens to: petition for alien relatives, accrue residence time for naturalization, work and travel without special permission, get grant funds for research, apply for desirable jobs, qualify for scholarships or

fellowships, or get in-state tuition for self, spouse or dependents.

23. Another common factor in the many mandamus lawsuits filed against USCIS involving pending FBI name checks is the plaintiffs' claim that they made repeated status inquiries about their case to USCIS, FBI, Congress, and the White House. While multiple status inquiries show the applicants' frustration with the pace of the processing of their applications, the inquiries, and mandamus actions, increase the workload of the FBI and USCIS, rather than having the effect of faster or special treatment of the subject applications. USCIS neither tracks nor records customer service inquiries in the administrative record.

24. The USCIS website at www.uscis.gov includes several advisories and public notices regarding processing delays that apply to all aliens, and the reasons for them. USCIS endeavors to give the best customer service possible to all customers, despite the millions of applications and petitions pending, and within the constraints of resource limitations.

25. USCIS is processing Plaintiff's adjustment of status application in accordance with standard procedures.

I declare under penalty of perjury that the foregoing is true and correct.

    Executed at Lincoln, Nebraska
on this 22nd day of January, 2008.

                                               _____
                                               Mark A. Rohrs
                                               Acting Service Center
                                                  Director
                                               Nebraska Service Center

ATTACHMENT

*Press Office*
U.S. Department of Homeland Security



U.S. Citizenship and Immigration Services

# Fact Sheet

April 25, 2006

## Immigration Security Checks—How and Why the Process Works

**Background**

All applicants for a U.S. immigration benefit are subject to criminal and national security background checks to ensure they are eligible for that benefit. U.S. Citizenship and Immigration Services (USCIS), the Federal agency that oversees immigration benefits, performs checks on every applicant, regardless of ethnicity, national origin or religion.

Since 2002, USCIS has increased the number and scope of relevant background checks, processing millions of security checks without incident. However, in some cases, USCIS customers and immigrant advocates have expressed frustration over delays in processing applications, noting that individual customers have waited a year or longer for the completion of their adjudication pending the outcome of security checks. While the percentage of applicants who find their cases delayed by pending background checks is relatively small, USCIS recognizes that for those affected individuals, the additional delay and uncertainty can cause great anxiety. Although USCIS cannot guarantee the prompt resolution of every case, we can assure the public that applicants are not singled out based on race, ethnicity, religion, or national origin.

USCIS strives to balance the need for timely, fair and accurate service with the need to ensure a high level of integrity in the decision-making process. This fact sheet outlines the framework of the immigration security check process, explaining its necessity, as well as factors contributing to delays in resolving pending cases.

**Why USCIS Conducts Security Checks**

USCIS conducts security checks for all cases involving a petition or application for an immigration service or benefit. This is done both to enhance national security and ensure the integrity of the immigration process. USCIS is responsible for ensuring that our immigration system is not used as a vehicle to harm our nation or its citizens by screening out people who seek immigration benefits improperly or fraudulently. These security checks have yielded information about applicants involved in violent crimes, sex crimes, crimes against children, drug trafficking and individuals with known links to terrorism. These investigations require time, resources, and patience and USCIS recognizes that the process is slower for some customers than they would like. Because of that, USCIS is working closely with the FBI and other agencies to speed the background check process. However, USCIS will never grant an immigration service or benefit before the required security checks are completed regardless of how long those checks take.

Immigration Security Checks—How and Why the Process Works

### How Immigration Security Checks Work

To ensure that immigration benefits are given only to eligible applicants, USCIS adopted background security check procedures that address a wide range of possible risk factors. Different kinds of applications undergo different levels of scrutiny. USCIS normally uses the following three background check mechanisms but maintains the authority to conduct other background investigations as necessary:

- **The Interagency Border Inspection System (IBIS) Name Check**— IBIS is a multiagency effort with a central system that combines information from multiple agencies, databases and system interfaces to compile data relating to national security risks, public safety issues and other law enforcement concerns. USCIS can quickly check information from these multiple government agencies to determine if the information in the system affects the adjudication of the case. Results of an IBIS check are usually available immediately. In some cases, information found during an IBIS check will require further investigation. The IBIS check is not deemed completed until all eligibility issues arising from the initial system response are resolved.

- **FBI Fingerprint Check**—FBI fingerprint checks are conducted for many applications. The FBI fingerprint check provides information relating to criminal background within the United States. Generally, the FBI forwards responses to USCIS within 24-48 hours. If there is a record match, the FBI forwards an electronic copy of the criminal history (RAP sheet) to USCIS. At that point, a USCIS adjudicator reviews the information to determine what effect it may have on eligibility for the benefit. Although the vast majority of inquiries yield no record or match, about 10 percent do uncover criminal history (including immigration violations). In cases involving arrests or charges without disposition, USCIS requires the applicant to provide court certified evidence of the disposition. Customers with prior arrests should provide complete information and certified disposition records at the time of filing to avoid adjudication delays or denial resulting from misrepresentation about criminal history. Even expunged or vacated convictions must be reported for immigration purposes.

- **FBI Name Checks**—FBI name checks are also required for many applications. The FBI name check is totally different from the FBI fingerprint check. The records maintained in the FBI name check process consist of administrative, applicant, criminal, personnel and other files compiled by law enforcement. Initial responses to this check generally take about two weeks. In about 80 percent of the cases, no match is found. Of the remaining 20 percent, most are resolved within six months. Less than one percent of cases subject to an FBI name check remain pending longer than six months. Some of these cases involve complex, highly sensitive information and cannot be resolved quickly. Even after FBI has provided an initial response to USCIS concerning a match, the name check is not complete until full information is obtained and eligibility issues arising from it are resolved.

For most applicants, the process outlined above allows USCIS to quickly determine if there are criminal or security related issues in the applicant's background that affect eligibility for immigration benefits. Most cases proceed forward without incident. However, due to both the sheer volume of security checks USCIS conducts, and the need to ensure that each applicant is thoroughly screened, some delays on individual applications are inevitable. Background checks may still be considered pending when either the FBI or relevant agency has not provided the final response to the background check or when the FBI or agency has provided a response, but the response requires further investigation or review by the agency or USCIS. Resolving pending cases is time-consuming and labor-intensive; some cases legitimately take months or even

**Immigration Security Checks—How and Why the Process Works**

---

several years to resolve. Every USCIS District Office performs regular reviews of the pending caseload to determine when cases have cleared and are ready to be decided. USCIS does not share information about the records match or the nature or status of any investigation with applicants or their representatives.

EXHIBIT B

*Office of Communications*
**U.S. Department of Homeland Security**



**U.S. Citizenship and Immigration Services**

February 20, 2007

# USCIS Update

### USCIS CLARIFIES CRITERIA TO EXPEDITE FBI NAME CHECK
*Federal Litigation Removed as Sole Basis to Expedite Check*

WASHINGTON – U.S. Citizenship and Immigration Services (USCIS) is no longer routinely requesting the FBI to expedite a name check when the only reason for the request is that a mandamus (or other federal court petition) is filed in the case.

USCIS may continue to request an expedited FBI name check if the case meets one of the other approved criteria, including:

1. Military deployment,
2. Age-out cases not covered under the *Child Status Protection Act*, and applications affected by sunset provisions such as diversity visas,
3. Significant and compelling reasons, such as critical medical conditions, and
4. Loss of social security benefits or other subsistence at the discretion of the USCIS District Director.

The FBI name check is an invaluable part of the security screening process, ensuring that our immigration system is not used as a vehicle to harm our nation or its citizens. USCIS also requests an FBI name check to screen out people who seek immigration benefits improperly or fraudulently and ensure that only eligible applicants receive benefits.

Information about the FBI name check is available on the USCIS website at http://www.uscis.gov or by calling the USCIS National Customer Service Center toll free at 1-800-375-5283.

–USCIS –

On March 1, 2003, U.S Citizenship and Immigration Services became one of three legacy INS components to join the U.S. Department of Homeland Security. USCIS is charged with fundamentally transforming and improving the delivery of immigration and citizenship services, while enhancing our nation's security.