**Tricia Wang (CA Bar No: 178473)**
LAW OFFICE OF TRICIA WANG
39159 Paseo Padre Parkway, Suite 205
Fremont, CA 94538
Telephone: (510) 791-0232
Fax: (510) 791-5609

Attorney for Plaintiff:        Chen, Xiling

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE, CALIFORNIA**

| | |
|---|---|
| Xiling CHEN )<br> )<br> Plaintiff, )<br> )<br>vs. )<br> )<br>Alberto Gonzales, Attorney General of the )<br>United States; Michael Chertoff, Secretary of the )<br>Department of Homeland Security; Emilio Gonzalez)<br>Director of United States Citizenship & Immigration)<br>Services; Robert Meuller, Director of the Federal )<br>Bureau of Investigations; Gerard Heinauer, )<br>Director of the Nebraska Service Center )<br> )<br> Defendants )  | Case No. C 07-4698 JW<br><br>PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>Date:   April 21, 2008<br>Time:  9:00 am<br>Courtroom: 8, 4th Floor |

 Plaintiff Xiling Chen hereby replies to Defendants' motion for summary judgment. Defendants attempt to justify their delay in adjudicating Plaintiff's application for permanent residency, <u>now pending for three years and nine months</u>, by confusing their discretion to approve or deny an application to adjust status with their non-discretionary to make a decision on the application. Defendants also attempt to justify their delay in the Plaintiff's name check by using national security as pretence. The reality is that Defendants have sat on Plaintiff's application for a clearly unreasonable amount of time —even after the petition for writ of mandamus was filed with this Court.

 **A. All defendants listed are proper defendants.**

The Department of Homeland Security is the agency responsible for implementing the Immigration and Nationality Act, so are the United States Citizenship & Immigration

1  Services and the Service Centers.  In particular, Robert Mueller, as the Director of the
2  Federal Bureau of Investigations, should be the most important defendant in this case,
3  because the FBI is responsible for the name checks.  **As admitted by the Defendants, "the**
4  **Plaintiff's application is ready to be adjudicated except for her pending background**
5  **and security check"**.  See Page 2, the Defendant's Motion for Summary Judgment.  The
6  USCIS has been giving the standard reply to all inquiries for all applications pending for
7  name checks, that the Service has NO control over how long it takes FBI to clear the case.
8  If that is the case, and the FBI is to be dismissed as the Defendant, then who is going to be
9  responsible for the excessive delays on the Plaintiff's name check?
10
11        **B.**      **Relief is warranted under the Mandamus Act and the APA**
12        **(i)**      **Nondiscretionary duty**

Defendants first assert that Plaintiff's motion for summary judgment should be
13  denied because the "adjustment of status is committed to the Secretary's discretion as a
14  matter of law" and "the statute does not set forth anytime frame in which a determination
15  must be made on an application to adjust status".  See Page 3, the Defendant's Motion for
16  Summary Judgment.  Contrary to Defendants' assertion, under the Immigration and
17  Nationality Act and its implementing regulations, Defendants <u>do</u> have a duty to act on these
18  applications. See 8 U.S.C. § 1255(a); 8 C.F.R. § 245.2(a)(5). Thus, Defendants cannot
19  indefinitely delay the adjudication of these applications.

20      The Defendants confuse a discretionary duty to approve an application for residency with
21  their non-discretionary duty to make a decision, one way or another, on an application. The
22  Plaintiff does not ask this Court to compel the Defendants to grant her application for residency
23  but rather asks the Court to compel the Defendants to adjudicate her application.  Numerous
24  Courts, including the Northern District of California, have held that there is a non-discretionary
25  duty to adjudicate adjustment of status applications. *See Aboushaban v. Mueller,* 2No. C 06-
26  1280 BZ, 2006 WL 3041086 at *2 (N.D. Cal. Oct. 24, 2006) (Judge Bernard Zimmerman
27  reading the statutory text of 8 C.F.R. § 209.2, (which he deemed similar to 8 C.F.R. § 245.2) as
28  "creating a non-discretionary duty to adjudicate the Plaintiffs [adjustment of status]
application); *Iddr v. INS,* 301 F.3d 492, 500 (7th Cir. 2002) (INA and relevant regulations

"confirm that the INS did have the duty to adjudicate the appellants' [adjustment of status] applications in a reasonable period of time); *Yu v. Brown,* 36 F. Supp.2d 922, 931 (D.N.M.1999) (Commenting on 8 U.S.C. § 1103 and relevant regulations, "The language of the statute and these regulations is mandatory not discretionary. Thus regardless of the ultimate decision, INS has a non-discretionary, mandatory duty to act on Plaintiffs' [adjustment of status] applications.")   In the words of the *Yu* Court, "[t]his argument has been flatly rejected numerous times by other courts." *See Yu,* 36 F.Supp.2d at 931. [*Citing Forest Guardians v. Dombeck,* 131 F.3d 1309 (9th Cir. 1997); *Mt. Emmons Mining v. Babbitt,* 117 F.3d at 1172 (10th Cir.1997); *Atlantic & Gulf Stevedores, Inc. v. Donovan,* 274 F.2d 794, 798 (5th Cir. 1960); *Mastrapas qua v. Shaughnessy,* 180 F.2d 999, 1002 (2d Cir.l950); and *Dabone v. Thornburgh,* 734 F.Supp. 195, 200 (E.D.Pa.1990).] Defendants are confusing their discretion over *how* they resolve adjustment of status applications with their non-discretionary duty to adjudicate. *See Dabone,* 734 F.Supp. at 200. In other words, while Defendants have discretion to approve or deny an application to adjust status, they still have a mandatory, non-discretionary duty to process Plaintiff's Application. *See Yu,* 36 F.Supp.2d at 931. *("All other courts addressing this question have held that INS has a non-discretionary duty to process application for LPR status as well as all other immigration applications"*) (Emphasis added). See also *Am. Academy of Religion v. Chertoff*, No. 06 Civ. 588 (PAC), 2006 WL 1751254, at *16 (S.D.N.Y. June 23, 2006) (holding that the language stating that officials were to either "issue or refuse" a complete visa creates a duty to adjudicate)). *Haidari v. Frazier*, No. 06-3215, U.S. Dist. LEXIS 89177 (D. Minn. Dec. 8, 2006) (noting that while "the decision of whether to *grant* or *deny* an adjustment application is discretionary…Plaintiffs are only asking [the] Court to compel Defendants to make *any* decision." (emphasis in original)   Accordingly, Defendants have a plain duty to adjudicate Plaintiff's adjustment of status application.

   **(ii)** **Duty to act within a reasonable time**

  Next, Defendants assert that they have not failed to act in a reasonable time in the adjudication of these applications. Although Defendants are correct in stating that neither statute nor regulation provides a timeliness requirement, previous Courts have held that APA § *555(b)* still imposes a duty to complete action on adjustment of status applications within a reasonable time. *See Aboushaban,* 2006 WL 30410886 at *2 (Defendants must adjudicate within reasonable time); *Yu,* 36 F. Supp.2d 922, 932 ("Defendants owe Plaintiffs

a non-discretionary duty to complete processing of Plaintiffs' applications in a reasonable time.") *See also Kim v. Ashcrofi,* 340 F. Supp 2d 384, 393 (S.D.N.Y.2004) ("…although there is no statutory or regulatory deadline by which the CIS *must* adjudicate an application, at some point, defendants' failure to take any action runs afoul of section 555(b).") ([T]he [US]CIS simply does not possess unfettered discretion to relegate aliens to a state of 'limbo,' leaving them to languish there indefinitely. This result is explicitly foreclosed by the APA.") "The fact that neither the statute nor the regulations establish a <u>specific</u> deadline does *not* change the character of the duty itself. While the substance of the decision whether to grant or deny a petition obviously is discretionary, *the duty to process the application is just as obviously ministerial.* Congress expected the executive branch to receive applications of this kind and then to 'adjudicate' them to a decision." *Razaq v. Poulos,* NO. C 26-2461 (N.D.Ca. 2007).

Plaintiff recognizes that the decision to whether to grant or deny Plaintiff's adjustment of status is committed to the discretion of the Attorney General. Plaintiff also recognizes that there is no statute or regulation mandating when and how the FBI completes the processing of a name check. However, Plaintiff feels that the CIS has a clear duty to adjudicate the application properly filed by the Plaintiff according to the laws of this country. Plaintiff respectfully disagrees on the argument that the FBI can or should take an indefinite time to complete the name check or that the Attorney General or FBI can or should take an indefinite time to exercise the discretion delegated to them by law. A discretion taken to this extreme will be arbitrary, capricious and not warranted by law. "A 'duty to decide' becomes no duty at all if it is accompanied by unchecked power to decide when to decide." *Razaq v. Poulos,* NO. C 26-2461 (N.D.Ca. 2007).

One of the main reasons that make America the greatest country in the world is our great political system built upon the check and balance of the three branches of our government. Plaintiff admits that "the remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." However Plaintiff prays this Court to recognize that this case is exactly a drastic one that requires this Court's intervention. Without this Court's intervention, Plaintiff and all other unlucky people who got stuck in this situation will be left with no remedy whatsoever. The government feels that they can take as long as whatever time they need, 5 years, 10 years or even longer, because there is no statute or

4

regulation that requires the Attorney General act on an application for adjustment of status within a specific time period, nor do they require the FBI to complete a name check within a specified time frame.

### (iii) Reasonable time criteria - The "TRAC factors" analysis

A general timing provision for agencies is provided within the APA at U.S.C. §555(b), which states that agency action should be concluded within a reasonable time. *See Forest Guardians v. Babbit,* 174 F.3d 1178 (10th Cir. 1999). Where the governing statute specifies no deadline for a governmental act, the Ninth Circuit has considered the following six factors, known as the "TRAC factors" to help evaluate whether a government agency has unreasonably delayed concluding a matter before it, in violation of the APA:

> (1) the time agencies take to make the decision must be governed by a "rule of reason" (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason, (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake, (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority, (5) the court should take into account the nature and extent of the interests prejudiced by the delay, and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed."

*Razaq v. Poulos,* No. 06-2461, U.S. Dist. LEXIS 770 (ND. Cal. 2007) quoting *Indep. Mining Co., Inc. v. Babbitt,* 105 F. 3d 502, n. 7 (9th Cir. 1997). Another court in this District has applied this analysis where a plaintiff asked the Court to compel USCTS to complete adjudication of an adjustment application whether relief was granted under the Mandamus Act or under the APA. *Ibrahim v. Chertoff* No. 06-2071-L May 25, 2007 U.S. Dist. LEXIS 38352.

In the present case, applying the TRAC analysis leads incontrovertibly to the conclusion that Defendants' delay of almost four years in adjudicating Plaintiff's adjustment application is unreasonable as a matter of law. In addressing the "rule of reason" or "Congressional expectation" factor, Plaintiff has noted and it is also undisputed by the Defendants that the processing time at the USCIS for adjustment of status application is approximately six months. Plaintiff's application was filed on April 19, 2004. By USCIS's own standards, processing has been delayed for over three and half years. Further, in "The

Immigration Services and Infrastructure Improvements Act of 2000" Congress has stated its expectation that adjustment applications should be completed within 180 days after filing. 8 U.S.C. §1571.

Even viewing facts in the light most favorable to Defendants', the Defendants' delay in adjudicating Plaintiff's application, without specific explanation for such delay, is unreasonable as a matter of law. The processing of Plaintiff's application has been suspended on name check clearance. The declarations submitted by Defendants state that the overwhelming majority of name checks are resolved within 60 days of submittal. Plaintiff's name check request was initiated over three years and nine months ago and remains pending. Yet the Defendants have failed to provide an explanation on the delay that is particularized to the Plaintiff. Further, in determining what constitutes a reasonable time in which USCIS should complete processing an adjustment application, a Court may and should consider the complexity of the matter. However, Defendants have not challenged Plaintiff's eligibility for permanent residence in the United States. They offered no evidence to show that Plaintiff's application is a particularly complex matter, either by way of presenting issues which require further investigation or by Plaintiff's failure to provide, or delay in providing, all the information necessary to establish her eligibility for the benefit sought. *Compare Razaq v. Poulos* 2007 WL 61884 (N.D. Cal. Jan. 8, 2007), *Saleh v. Ridge* 367 F. Supp. 2d at 511-512 (S.D.N.Y. *2005); Bartoloni v. Ashcrofi* 226 F. Supp. 2d 350, 354 (D. Conn. 2002). Therefore Defendants' delay in adjudicating Plaintiff's application is unreasonable as a matter of law.

In acknowledging that delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake, Courts in this District have recognized that an adjustment applicant suffers significant restrictions on his basic welfare when he is delayed in obtaining a decision on an application for permanent residency. An inability to obtain permanent resident status affects important rights including but not limited to the ability to travel abroad freely, to be employed without restriction, and to accrue time as a lawful permanent resident to become eligible to apply for citizenship. *Singh v. Still* 2007 06-2458 EMV 2007 U.S. Dist. LEXIS 16334 January 8, 2007. *See also Ngwanyia v. Ashcroft* 302 F. Supp. 2d 1076, 1079-80 (D. Minn. 2004). In the instant case, Plaintiff has been compelled to apply for multiple H1B extensions and advance parole

document over the 45 months that her application has been pending and has lost valuable time as a lawful permanent resident during which she would have been working toward eligibility to apply for naturalization.  After this petition was filed on September 12, 2007, Plaintiff had to once again apply for H1B extension in December 2007 because her H1B was to expire on March 1, 2008.

       Plaintiff readily concedes that national security is an important competing priority.  However, the mere invocation of national security is insufficient to make Defendants' almost four years delay reasonable per se.  *Singh v. Still No.* 06-2458 EMC 2007 U.S. Dist. LEXIS 16334 January 8, 2007 at *16. In the present case, Defendants have presented no evidence whatsoever to suggest that national security concern are implicated in Plaintiff's application or that Plaintiff's application is complex in any other way.  Further, the USCIS Ombudsman's 2007 Annual Report to Congress reiterates the point made in his 2006 Report that the FBI name checks are of limited value to national security.

> The Ombudsman agrees with the assessment of many case workers and supervisors at USCIS field offices and service centers that the FBI name check process has limited value to public safety or national security, especially because in almost every case the applicant is in the United States during the name check process, living or working without restriction. . . . Delays in the name check process actually prolong an individual's presence in the United States while the check is pending. In this sense, the current USCIS name check policy may increase the risk to national security by extending the time a potential criminal or terrorist remains in the country.

http://www.dhs.gov/xlibrarv/assets/CISOMB_Annual Report 2007.pdf.  *See* USCIS Ombudsman's 2007 Report to Congress at 40.

Therefore it is the unreasonable delay that may impose a risk against the national security and it is totally up to the Defendants' responsibility to implement a more efficient system to speed up the process required by national security.

       In addition, while the Court should balance Plaintiff's right to the timely processing of her adjustment application against national security issues, nothing in the record shows that Plaintiff poses a risk to national security.  Plaintiff Xiling Chen has been entitled to reside in and work in the U.S. since March 2000.  She has continuously maintained lawful status in the United States and has no arrest record.   She has been employed as a Staff Engineer with TIBCO Software Inc. in Palo Alto, California for the past seven years.  Plaintiff would be no more a danger to the security of this country after she is granted

7

adjustment of status than she has been for the past seven years while the government ignored her and was totally unconcerned that she was residing in this country and going about her daily business. If the government does find something at any later date that would have actually been a basis for denying adjustment, it can always initiate removal proceedings against Plaintiff from the United States or rescission of Plaintiff's permanent residency on the grounds that she was inadmissible at the time of admission. See 8 U.S.C. §1227 and 1256. Defendants have five years to bring any such rescission proceeding --and there is no time limit on bringing such a removal proceeding. 8 U.S.C. § 256(a); Matter of Pereira, 19 I. & N. Dee: 169 (BIA 1984).

In conjunction with their argument based on national security, Defendants implicitly raise an explanation of a large workload and limited resources. They argue that the substantial increase in requests for name checks since 9/11 is sufficient to excuse the delay in completing adjudication of Plaintiff's application and should, as a matter of law, deprive her of the right to seek relief under the mandamus statute or the APA. This argument should fail. "[D]elays of a significant magnitude, particularly when they occur over uncomplicated matters of great importance to the individuals involved, may not be justified merely by assertions of overwork." *Yu*, 36 F. Supp. 2d at 934 (citations omitted); see also *Forest Guardians v. Babbitt,* 164 F.3d, 1261, 1273-1274 (10th Cir. 1998) (once the court determines that there has been an unreasonable delay, the court is required to issue a mandatory injunction and cannot consider the agency's lack of resources in fashioning a remedy. Further, Defendant CIS cannot shift responsibility for its breach of duty to the FBI. CIS has contracted out the task of completing security and background checks to the FBI. The FBI's duty is therefore subsumed under that of CIS and both are arms of the federal government. *Paunescu*,76 F. Supp. 2d at 903 n.2.

What constitutes a reasonable time is a mixture of quantitative and qualitative factors. A court in this District has found that a more than two year delay was unreasonable as a matter of law. *Gelfer v. Chertoff* 2007 WL 902382 at 2. Other courts have found 6-24 months delay in processing adjustment of status to be unreasonable. Galvez v. Howerton, 503 F.Supp. 35, 39 (C.D.Cal.1980) (holding a six-month delay unreasonable); Paunescu v. INS, 76 F.Supp.2d 896, 90 1-02 (N.D.Ill.l999) (holding a ten-month delay unreasonable); Yu v. Brown, 36 F.Supp.2d 922, 932 (D.N.M.l999) (holding a two-and-a-half year delay unreasonable).

1    While quantitative measures are a factor to be considered, reasonableness of delay is
2    to be determined on a case-by-case basis, depending on the complexity of the matter or
3    whether the plaintiff has contributed to the delay. However, nothing in the record shows
4    why Plaintiffs adjustment application might be complex or otherwise justify a delay of
5    almost four years in processing.  While Defendants have stated that Plaintiff's name check
6    request was electronically submitted to the FBI on April 29, 2004, nothing in the record
7    shows that ***anything*** was done subsequently to advance the clearance process. Delay in
8    completing the name check on Plaintiff's application has far exceeded the normal time
9    frame and yet Defendants have offered no explanation whatsoever as to why this should be
10   so. The Defendants claim that the Agencies are exercising every effort to address the delay,
11   and that "the FBI and USCIS are taking active steps towards completing the background
12   checks for adjudication of her application."  Yet they have failed to show that they have
13   made reasonable efforts to complete Plaintiff's adjustment of status application.  Defendants
14   have given no indication of when the clearance will be completed or what has caused the
15   delay.  Nothing in the declarations submitted or elsewhere in the record sheds any light on
16   why Plaintiff's application might be so complex as to explain such delay.  The Mandamus
     Act and the APA provide a check on USCIS for its failure to fulfill its duty to the plaintiff,
     namely to adjudicate her adjustment application within a reasonable time.

17           **(iv)    Writ of mandamus is the only remedy**

18            For purpose of mandamus relief, Plaintiff must demonstrate that he or she has no
19   other adequate remedy available to them.  The Plaintiff has no such a remedy.  It is true that
20   an alien who has applied for adjustment of status may apply for and obtain employment
21   authorization and most applicants for adjustment of status may also apply for advance
22   parole to enable them to travel abroad during the pendency of their application.  However
23   there are many problems associated with the indefinite pendency of the adjustment of status
24   application.  Besides the financial burden of having to pay the application fees year after
25   year, the most troublesome problem is the time associated with obtaining the employment
26   authorization and advance parole from the CIS.  Both employment authorization and
27   advance parole take an average of three months to be granted, and just as correctly pointed
28   out by the Defendants, the CIS has exactly the same discretion to decide whether to grant it
     or to deny it, and there is no statute or regulation that mandates the CIS act on the

employment authorization and advance parole applications within a specific time frame. If the applicant got unlucky and his or her application for employment authorization or advance parole takes longer than the average three months, he or she will need to stop working or cannot travel for his or her employment on assignments to be conducted abroad.

The Defendants claim FBI is proceeding in an orderly and timely fashion and on a "first in, first out" basis. And if the Court were to grant Plaintiff's requested relief, it would compel the processing of the applications out of order and unfairly favor the "more litigious applicants". *See* Defendants' Motion to Dismiss. This assertion of "orderly and timely fashion" is totally contrary to the facts. As stated in the Defendants argument, only 10 percent out of all name check requests are the subjects of the prolonged delay. Compared to the remaining 90% applicants, these 10% applicants are the "first in" ones but are unfortunately not "first out". These fellows are held in the interminable pendency of their applications and cannot make plans for their lives. Plaintiff is NOT the "more litigious applicant". In fact Plaintiff is greatly depressed by the court fee and attorney fees she has to pay from her hard earned salary, in addition to the anxiety over her application which has been pending for 45 months! Mandamus action provides the aggrieved party like Plaintiff the last resort. If the relief of mandamus were unavailable as a matter of law, Defendants could fail to exercise their duties indefinitely.

It is noted that the normal processing time for an *I-485 Application to Register Permanent Residence or Adjust Status* is approximately 6 months. In particular, Plaintiff Xiling Chen applied for adjustment of status as a derivative applicant together with her husband Zhenru Ding and on the same day, her application is still pending, now three years after her husband became a permanent resident of the United States. Plaintiff Xiling Chen has waited for almost four years!!! She has waited her turn in line.

It is undisputed that Plaintiff has waited her turn in line for three years and nine months. It is undisputed that Plaintiff has complied with all the requirements for this application. It is undisputed that it is the expectation of Congress that adjustment applications shall be completed within 180 days from submittal. Declarations submitted by the Defendants in this matter state that it is normative to complete the vast majority of name checks within 60 days of submittal and the only issue preventing Defendants from completing adjudication of Plaintiff's application is completion of her name check. In the

face of these undisputed facts, Defendants have provided no evidence whatsoever to explain the delay in processing Plaintiff's application.  The Plaintiff has been adversely affected by the delay in adjudication of her 1-485 application despite the fact that she has met the statutory requirements for eligibility. She has been damaged by being deprived of a decision for nearly four years; by being unable to plan or pursue a course of action in the United States in her professional or personal life because her adjustment application remains pending, and by being compelled to repeatedly apply and pay for H1B extension in order to stay employed and to apply for travel documents to visit her 85-year-old father in China. Without this Court's order, Plaintiff's application is likely to continue pending without a decision indefinitely.  Plaintiff has no other adequate remedy.

## **CONCLUSION**

Plaintiff has a clear right to the relief requested and Defendants have a clear duty to adjudicate her application for adjustment of status in a reasonable time. No other adequate remedy is available. Relief under the Mandamus Act and the APA is therefore warranted. The evidence considered in the light most favorable to the government, demonstrates, as a matter of law, that Defendants have unreasonably delayed in processing Plaintiff's application for adjustment of status.  Plaintiff's motion for summary judgment should be granted and Defendants' cross motion should be denied. The Court should order that Defendants adjudicate Plaintiff's applications within 10 days.

Dated:  March 3, 2008

Respectfully submitted,

_____/s/_____
Tricia Wang
Attorney for Plaintiff